**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Randy Brown, | No. CV-24-00496-TUC-JCH |
| Plaintiff, | **ORDER SCREENING COMPLAINT** |
| v. | |
| Larry Brown, et al., | |
| Defendants. | |

Pro se Plaintiff Randy Brown has filed a Complaint against Defendants for violations of the Americans with Disabilities Act ("ADA"), the Civil Rights Act, and Arizona law (Doc. 1). Also before the Court is Plaintiff's Application for Leave to Proceed in Forma Pauperis (Doc. 2) and Motion to Allow Electronic Filing by a Party Appearing Without an Attorney (Doc. 3). For the reasons stated below, the Court will grant Plaintiff's Motion to Proceed in Forma Pauperis, dismiss the Motion to Allow Electronic Filing as moot, and dismiss the Complaint with prejudice.

**I.      Application for Leave to Proceed in Forma Pauperis**

In his Application for Leave to Proceed in Forma Pauperis, Plaintiff asserts that his sole monthly income is disability payments in the amount of $800. Doc. 2 at 1–2. He further states he has only $379 in savings and approximately $610 in monthly expenses. *Id.* at 2, 4–5. Because the filing costs would amount to half of Plaintiff's monthly income and paying the costs may leave him unable to afford his monthly expenses, the Court is satisfied that Plaintiff has shown he is unable to pay without hardship. As such, the Court

will grant Plaintiff's Application for Leave to Proceed in Forma Pauperis.

**II.     Motion to Allow Electronic Filing**

As discussed below, Plaintiff has failed to state a claim on which relief may be granted, and the Court will dismiss his Complaint with prejudice. Because there will be no further filings in this case, the Court will also deny Plaintiff's Motion to Allow Electronic Filing as moot.

**III.    Statutory Screening of a Pro Se Complaint**

Under 28 U.S.C. § 1915(e)(2), notwithstanding the payment of any filing fee, the Court shall dismiss a case brought by a plaintiff seeking *in forma pauperis* status if the Court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

In order to state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 566 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Still, the Court must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a pro se litigant] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). If the Court determines a complaint could

be cured by the allegation of additional facts, a pro se litigant is entitled to an opportunity to amend that complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc).

**IV.    Complaint**

In his Complaint, Plaintiff brings two counts against Defendants Larry Brown, Karen Brown, Charlotte Gundry, and Pima County.[1] In Count One, Plaintiff alleges "DEFENDANTS' POLICIES AND PRACTICES VIOLATE Both 42 U.S.C. § 12131 et seq., *Title II of the Americans With Disabilities Act and Title II of the Civil Rights Act of 1964*." Doc. 1 at 18. In Count Two, Plaintiff alleges violations of Ariz. Rev. Stat. § 46-471. Doc. 1 at 22.

**A.    Factual Allegations**

Plaintiff, Randy Brown, states that he is the oldest son of Annie Brown ("Ms. Brown") and an heir under her will. Doc. 1 at 4, 23. According to Plaintiff, between 2015 and 2017, Ms. Brown's Physician, Dr. Lloyd Anderson, discovered via CT scans and MRIs that Ms. Brown had begun to develop a brain disease. *Id.* at 6. In 2016, Dr. Anderson officially diagnosed Ms. Brown with a disease that he predicted would "destroy Ms. Brown's capacity to process emotionally upsetting information." *Id.* at 6–7. Dr. Anderson told Plaintiff that this disease was associated with elder abuse. *Id.* Over time, Ms. Brown began to hallucinate when she became fearful or upset, "mistaking the words of third parties to be her own thoughts." *Id.* at 7. The disease caused her to be unable to regulate and process her emotions. *See Id.*

Plaintiff claims that in 2021, after witnessing one of Ms. Brown's hallucinations, Defendant Larry Brown ("Defendant Brown")[2] contacted an attorney, Jonathan Reich. Doc. 1 at 7. Mr. Reich directed Defendant Brown to obtain a signed power of attorney

---

[1] In the Complaint's caption, Plaintiff names the "State of Arizona" as a Defendant, but all factual allegations reference Pima County specifically. *See, e.g.*, Doc. 1 at 1, 5–6. Accordingly, the Court will treat Pima County as a Defendant in place of the State of Arizona.

[2] Defendant Larry Brown's wife, Karen Brown, is also named as a Defendant, but she is involved minimally in the factual allegations relating to Plaintiff's claims. As such, the Court will use "Defendant Brown" in reference to Larry Brown and "Defendant Karen Brown" in reference to Karen Brown for ease and clarity.

from Ms. Brown and hire Haven Health Corporation ("HHC"). *Id.* Defendant Brown subsequently caused Ms. Brown to be transported to Haven of Saguaro Valley ("Haven"), a subsidiary of HHC. *Id.* At Haven, Charlotte Gundry ("Defendant Gundry"), a nurse practitioner employed by HHC, drafted a report stating that Ms. Brown had cognitive capacity, failing to note "Dr. Anderson's diagnosis, the notes of EMS personnel, [and] the reports and notes of nurses and physicians at Saint Joseph's Hospital" that documented Ms. Brown's cognitive disorder. *Id.* Defendant Brown subsequently caused Ms. Brown to sign documents giving him access to her retirement accounts. *Id.* at 7–8. These accounts, which amounted to an excess of $250,000, were not accounted for in Ms. Brown's will. *Id.* at 8. In total, Defendant Brown obtained approximately $700,000 from Ms. Brown. *Id.* at 9. A court investigator, Piedad Hogan, did not notice this and determined Ms. Brown to be mentally capable of protecting herself from financial exploitation despite "mild neuro-cognitive decline." *Id.*

Plaintiff asserts that while he and Defendant Brown were entitled to equal shares of Ms. Brown's home and possessions under her will, Defendant Brown and his wife, Karen Brown ("Defendant Karen Brown"), removed property from the home, which contained several valuable items and collections. *Id.* at 9–10; *see also Id.* at 14–17. Plaintiff expressed his concerns about the way Defendant Brown was handling Ms. Brown's retirement accounts and otherwise visited and advocated for Ms. Brown at Haven. *See id.* at 13. Importantly, Plaintiff asked Charles McGinty, the manager of Haven, to have Ms. Brown's prescriptions transferred to another pharmacy. *Id.* at 11–12. Mr. McGinty declined the request, telling Plaintiff that the prescriptions were "none of [his] business." *Id.* at 12. Afterward, Plaintiff "emailed Mr. McGinty, asking for a *reasonable accommodation*." *Id.*

On March 3, 2022, Mr. McGinty and other Haven staff entered Ms. Brown's room while Plaintiff was visiting. Doc. 1 at 13. Plaintiff alleges that, in response to Plaintiff's efforts to advocate for his mother, Mr. McGinty and Haven staff forcibly removed Ms. Brown despite her protests. *Id.* Plaintiff also claims that Mr. McGinty "grabbed Plaintiff's

throat," called him a "Stupid Black [MF]," and threatened to kill him. *Id.* Afterwards, Defendants Brown and Karen Brown, along with Haven employees, told Ms. Brown that the altercation was Plaintiff's fault and encouraged her to accuse him of assault. *Id.* Ms. Brown was subsequently unable to accurately remember the events of March 3, 2022. *Id.* at 17.

Generally, Plaintiff claims that because of her cognitive condition, Ms. Brown was unable to stop Defendant Brown from accessing her retirement funds, removing her from her home, or selling her valuable possessions, resulting in the loss of money and property worth more than $1.2 million. *See* Doc. 1 at 17–18. Her cognitive condition further stopped Ms. Brown from preventing herself and Plaintiff from being assaulted on March 3, 2022. *Id.*

**B. Standing**

A plaintiff must have standing in order to invoke the jurisdiction of the federal courts. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish standing, a plaintiff must demonstrate a 'personal stake in the outcome of the controversy' . . . ." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (quoting *Gill v. Whitford*, 585 U.S. 48, 65 (2018)). Standing is established if a plaintiff shows that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* Generally, this means the plaintiff himself must suffer the injury in fact, not a third party. *See U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990). Additionally, pro se plaintiffs do not have the authority to represent anyone other than themselves. *See Simon v. Hartford Life and Accident Ins. Co.*, 546 F.3d 661, 664 (9th Cir. 2008).

In his 24-page Complaint, Plaintiff references himself rarely and instead repeatedly asserts that his mother, Ms. Brown, has been harmed by Defendants' conduct. *See, e.g.*, Doc. 1 at 1 ("Plaintiff alleges that public entities of the government of Pima County Arizona failed to accommodate Ms. Annie B. Brown's *stress induced cognitive disability* . . . ."); *Id.* at 19 ("[Defendant Brown] and his associates at HHC knew or

- 5 -

should have known about the *effective communication* disability caused by Ms. Brown's damaged *prefrontal cortex* that precluded her capacity to communicate effectively . . . ."). Because Plaintiff does not have standing to bring claims on his mother's behalf, the Court will address the counts presented in the Complaint in relation only to the harm Plaintiff alleges that he has suffered directly.

### C. Count One: Americans with Disabilities Act

First, Plaintiff claims Defendants violated Title II of the ADA because Defendant Brown "and his associates at HHC knew or should have known about the *effective communication* disability . . . that precluded [Ms. Brown's] capacity to communicate effectively" and fraudulently concealed her disability. Doc. 1 at 19–20. Plaintiff also alleges that Pima County and its various entities failed to accommodate Ms. Browns "*effective communication* disorder" by not recognizing this deceit. *See id.* at 21.

These allegations fail to state a claim for several reasons. First, Plaintiff does not claim that he suffered a concrete injury as a result of the alleged failure to acknowledge Ms. Brown's mental incapacity, effectively disposing of his ADA claim.[3] Further, Plaintiff has a fundamental misunderstanding of what Title II of the ADA does. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Nowhere in his Complaint does Plaintiff claim that he has been excluded from participation in or the services of a public entity, much less specify how the Defendants' deceit, or failure to recognize it, contributed to such exclusion.

Instead of showing the Court that he (or Ms. Brown, for that matter) was discriminated against under the ADA, Plaintiff repeatedly reiterates that Ms. Brown has an "effective communication disorder." *See, e.g.*, Doc. 1 at 18. Plaintiff again

---

[3] Plaintiff reiterates that he asked for a "*reasonable accommodation*" to obtain Ms. Brown's medical records, Doc. 1 at 4, and have her prescriptions transferred, Doc. 1 at 11–12. It is unclear what, if any, harm Plaintiff suffered as a result of these requests being denied. Regardless, these requests are not the type of accommodations covered under the ADA.

- 6 -

misunderstands what "effective communication" means in the context of the ADA. The ADA requires public entities to "take appropriate steps to ensure that communications with [individuals] with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1).[4] The "effective communication" statute further elaborates that these steps include furnishing "appropriate auxiliary aids and services" for disabled individuals, which can "vary in accordance with the method of communication used by the individual." § 35.160(b). Again, nowhere in the Complaint does Plaintiff allege that Ms. Brown required auxiliary aids and services to be able to communicate, that Defendants failed to provide such required accommodations,[5] or that he suffered harm as a result.

### D. Count One: Civil Rights Act

Also within Count One, Plaintiff alleges that his rights were violated under Title II of the Civil Rights Act of 1964 when Charles McGinty, the manager of Haven, "assaulted" Plaintiff and Ms. Brown, calling Plaintiff a "Stupid Black MF." Doc. 1 at 13, 19. This is Plaintiff's only factual allegation involving race. Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a).

Here again, Plaintiff fails to state a plausible claim. To establish a prima facie case under Title II of the Civil Rights Act, a plaintiff must demonstrate that he

> (1) is a member of a protected class; (2) attempted to contract for services and afford himself or herself of the full benefits and enjoyment of a public accommodation; (3) was denied the full benefits or enjoyment of a public accommodation; and (4) such services were available to similarly situated persons outside his or her protected class who received full benefits or were

---

[4] The guidelines surrounding this requirement seem to be colloquially referred to as the "effective communication rules." *See ADA Requirements: Effective Communication*, ADA.gov, https://www.ada.gov/resources/effective-communication/ (last updated Feb. 28, 2020).

[5] The closest Plaintiff gets to a relevant allegation is his claim that the Tucson Police Department ("TPD") lacked the requisite training to recognize "schemes targeting elders with latent *effective communication* disorders." Doc. 1 at 21. Still, he does not allege that TPD failed to take measures to effectively communicate with Ms. Brown directly.

treated better.

*Crumb v. Orthopedic Surgery Med. Grp.*, No. 07-cv-6114-HK-PLAx, 2010 WL 11509292, at *3 (C.D. Cal. Aug. 18, 2010) (quotation omitted), *aff'd*, 479 F. App'x 767 (9th Cir. 2012); *see also Dragonas v. Macerich*, No. CV-20-01648-PHX, 2020 WL 363852, at *8–9 (D. Ariz. Feb. 3, 2021).

Plaintiff has adequately alleged that he is a member of a protected class, *see* Doc. 1 at 19, but that is as far as his claim goes. First, Haven is very likely not a place of public accommodation for the purpose of a Title II claim. *See Indep. Housing Servs. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 and n. 14 (S.D. Cal. 1998) (residential housing units such as "apartments and condominiums do not constitute public accommodations" under the ADA). But even assuming arguendo that Haven is a place of public accommodation, Plaintiff has not alleged that he was "denied the full benefits or enjoyment" of the facility. He also fails to mention entirely the way in which other similarly situated individuals were treated at Haven.

### E.  Count Two: State Law Claims

In his second count, Plaintiff alleges that Defendants Brown, Karen Brown, and Gundry concealed Ms. Brown's cognitive disorder and coerced her to sign documents that allowed Defendants to misappropriate retirement funds and other assets. Doc. 1 at 22–23. The Court will again dismiss these claims for several reasons.

Plaintiff brings Count Two under Ariz. Rev. Stat. § 46-471, which provides that, within the Adult Protective Services Act ("APSA"), financial exploitation is defined as

> (a) The wrongful or unauthorized taking, withholding, appropriating or use of money, assets or property of an eligible adult.
>
> (b) Any act or omission taken by a person, including through the use of a power of attorney, guardianship or conservatorship of an eligible adult, to either:
>
> > (i) Obtain control through deception, intimidation or undue influence over the eligible adult's money, assets or property to deprive the eligible adult of the ownership, use, benefit or possession of the eligible adult's money, assets or property.
> >
> > (ii) Convert money, assets or property of the eligible adult to deprive

>   the eligible adult of the ownership, use, benefit or possession of the eligible adult's money, assets or property.

§ 46-471(3). This statute is purely definitional and does not provide a cause of action. This alone is enough to dismiss this Count Two for failure to state a claim.[6]

Even without this deficiency, the Court will not exercise supplemental jurisdiction over Plaintiff's state law claim. When a district court has original jurisdiction over an action, such as an action brought under federal law, 28 U.S.C. § 1367 allows the court to exercise supplemental jurisdiction over state law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court can decline to exercise supplemental jurisdiction when the court has "dismissed all claims over which it has original jurisdiction." § 1367(c)(3). As discussed above, the Court will dismiss Plaintiff's ADA and Civil Rights Act claims. Accordingly, the Court declines to exercise jurisdiction over Plaintiff's financial exploitation claim.

## V.   Conclusion

For the forgoing reasons, the Court will dismiss the Complaint in its entirety with prejudice. Despite Plaintiff's claims for violations of the ADA and the Civil Rights Act, his Complaint makes clear the root of his grievance: Plaintiff is dissatisfied with the way his brother, Defendant Brown, has handled his mother's care and believes that Defendant Brown has misappropriated assets to which Plaintiff would have someday been entitled under her will. Such claims belong in state court. *See Kuerschner v. Kuerschner Irrevoc. Trust*, No. CV-24-01235-PHX-SPL, 2024 U.S. Dist. LEXIS 131604, at *1 (D. Ariz. June 12, 2024) (citing *Marshall v. Marshall*, 547 U.S. 293, 311–12 (2006)) ("Federal courts do not possess jurisdiction over probate disputes."). Further, there are several Arizona

---

[6] It is plausible that Plaintiff is attempting to state a claim under Ariz. Rev. Stat. § 46-456(a) ("A person who is in a position of trust and confidence to a vulnerable adult shall use the vulnerable adult's assets solely for the benefit of the vulnerable adult and not for the benefit of the person who is in the position of trust and confidence to the vulnerable adult or the person's relatives."). Even construing the Complaint this way, Plaintiff, because he is not the vulnerable adult or conservator, must "petition the court for leave to file an action on behalf of the vulnerable adult" before he can sue under this statute. § 36-356(G). Plaintiff has not complied with this prerequisite.

statutes that seem suited to address Plaintiff's grievances. *See e.g.*, Ariz. Rev. Stat. §§ 46-451 through 14-474 (Arizona Adult Protective Services Act); §§ 14-1101 through 14-13118 (Trusts, Estates and Protective Proceedings).

Plaintiff's federal claims lack merit, and the Court is skeptical that any number of additional facts would remedy the deficiencies. *See AmeriSourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("[A] district court need not grant leave to amend where the amendment . . . is futile."). The conduct Plaintiff is alleging is simply not the type of conduct prohibited by Title II of the ADA or the Civil Rights Act. Further, the defendants against which Plaintiff brings these claims are not the types of defendants liable under these statutes. Again, the Court suspects there is a reason for these defects. The "effective communication" allegations Plaintiff attempts to bring under the ADA and "assault" claim he attempts to bring under the Civil Rights Act serve only as examples of ways in which Defendant Brown has allegedly manipulated his mother to steal Plaintiff's inheritance. To reiterate: this is not an issue for federal court. Plaintiff's remedy, if any, lies in state court.

## VI. Order

Accordingly,

**IT IS ORDERED granting** Plaintiff's Application for Leave to Proceed in Forma Pauperis (Doc. 2).

**IT IS FURTHER ORDERED denying** Plaintiff's Motion to Allow Electronic Filing by a Party Appearing Without an Attorney (Doc. 3) as moot.

**IT IS FURTHER ORDERED dismissing** Plaintiff's Complaint (Doc. 1) with prejudice. The Clerk of Court shall enter judgment accordingly.

Dated this 30th day of December, 2024.

John C. Hinderaker
United States District Judge